Mr. Clark, thank you. You may be seated. Good afternoon. First case this afternoon and our last case this afternoon is case number 4160938 Lebrot v. Illinois Department of Financial & Regulation For the appellant, Charles Harris II and for the applant, Bridget DeBatista, you may proceed, Mr. Harris. May it please the Court, my name is Charles Harris and I'm here on behalf of the appellant, Dr. Thomas Lebrot. Now, as we discussed in our brief, we're asking the Court to dismiss this action. And if you don't dismiss this action, we're asking for one of two things. Either reverse Dr. Lebrot's fine and remand the proceeding with instructions to the director to impose a lesser sanction or remand the matter for a new hearing that allows for the testimony of Dr. Zachariah. Now, I plan to focus on three substantive issues today. The first, I will discuss why you should dismiss this action under Department's rules and the particular rule here is 1110130. Second, I will discuss why the Department said that's, and let me go back and just say that is for not producing Dr. Zachariah's letter. What do you mean dismiss it? We're an appellate court, what do you mean dismiss the action? Well, Your Honor, our view is that you have the ability to dismiss this action because section 1110130A of the Department's rules require that if there's a violation of those rules, that dismissal is the appropriate remedy. Well, you're saying we would reverse and saying that it should have been dismissed. Yes. For the reversal. Okay, I'm with you. Yes. Please go ahead. So secondly, I'll just quickly discuss why not disclosing Dr. Zachariah's letter also violated Dr. Lebrot's due process. So that's just the first substantive issue. Secondly, I will discuss why imposing discipline against Dr. Lebrot's Illinois license here constituted an abuse of discretion. And lastly, I'll discuss our constitutional issue, which is that the director, quote, unquote, mirroring Dr. Lebrot's Kentucky discipline violated his due process rights. Now, turning to the first topics, the Department's rules, not common law, dictate the scope of discovery and proceedings before the Department. Now, that's important because I think that dictates what the question is here. And that question that's presented is whether the Department misconstrued its rules and not produced a Zachariah's letter. So it's not a common issue. It's a question of statutory interpretation. So that's important for the standard review here, which is when the court looks at these type of questions of statutory interpretation, it's, of course, a de novo review. And you should reject any agency interpretation of its own rules that's contrary to the clear language of those rules. Now, with that standard in mind, the relevant rule here, as I've discussed before, is Section 1110130 of the Department's rules. And that rule plainly states, and Section D1 of that rule, plainly states that Dr. Lebrot is entitled to, and I'll quote here, any evidence which tends to support the registrant's position or call into question the credibility of a Department witness. So that's the language we're talking about here. So one important point that I don't want to get lost here is when you're talking about a sister state action under Section 6022A12 of the Medical Practice Act, the only thing the Department has to do in order to show a violation of that act is bring in a certified copy of the record from the other state and say, okay, this person was subject to discipline in another state. So that's the only thing they do. They just have to show a violation of that act. So because of that, when you actually have a sister state action that goes to hearing, the only issue is really discipline. Whether there should be discipline imposed against the licensee and what that discipline is. And so because of that, I mean, Dr. Lebrot was only arguing about discipline here. He wasn't arguing about whether he actually violated the act. And so his position regarding discipline through the entire proceeding was that, look, my violation in Kentucky was only an administrative violation. And, look, we made a mistake, but that violation doesn't merit additional discipline in Illinois. And so if you look at Dr. Zachariah's letter here, which we discussed extensively in our brief, Dr. Zachariah's letter actually supports that position. He says, generally, when we in the department have a clinical privilege action, which is very similar to just a violation, some type of violation, and he gave an example of completing medical records, generally in those circumstances, the department doesn't prosecute the case. We just have some type of nondisciplinary action, such as a warning letter. And so that's what his letter said. And so that letter supported our position. And because the department refused to produce that letter, they violated Section 1110.130 of their rules. And that's only one basis on which they violated it. As you heard when I read the section a couple of minutes ago, also when you have evidence which questions the credibility of a department witness, that's a separate and distinct way that you violate that statute if you don't produce that evidence. And here, the only other witness other than Dr. LaRoe that was included on the department's witness list was Dr. Zachariah. And so they violated the statute by not producing that letter. Now let me turn to remedy. And so we talked a little bit about remedy before. And the remedy here is dismissal. And if you look at Section 1110.130a, it actually says that when a licensee brings an action alleging a violation of discovery rules, the only discipline that you can request is dismissal. And so it logically follows from that that, look, that is the only remedy that the department can impose here. And so let me just say this. We've made that argument. We first made that argument in our motion to dismiss in the proceeding. The department didn't respond to that argument. But we made that argument, not in writing, but they had a chance to respond to it at a hearing. And they didn't say, oh, dismissal is not an appropriate remedy. We also made that argument in our motion for rehearing in front of the department. The department did not say, no, that dismissal is not an appropriate remedy. We also made that argument in the circuit court. The department didn't contest that dismissal was a remedy. This is the first time the department has ever contested that dismissal was an appropriate remedy for a violation of their discovery obligations under their rules. So our view is that they waived that argument. But regardless, even if you don't find that they waived that argument, we feel that their interpretation of the rule, which they're suggesting that the department can have any sanction when they violate their rules, is wrong. And when you look at the statute, I think one thing you have to do is you have to look at, consider the cardinal principle of statutory construction, which matters here. And that is that the court should consider the consequences of a particular construction and presume that the drafters didn't intend an unjust consequence. And we believe the consequence would be unjust here if you allow the department the unfettered discretion to decide what sanction to impose against itself. Now, let me explain to you a little bit what they're arguing here. So they're telling the court that, look, you should impose, you should review this under an abusive discretion standard. And so essentially what they're saying is that the director, who's the top official in the department, should have unfettered authority to decide sanctions against his own department with no meaningful appellate review. This is what they're telling you. And this is a legitimate concern because just recently, and we talked about this in our brief, the executive branch actually tried to address this very issue, which is a structural bias issue in the department. And so Governor Rauner passed Executive Order 6 last year, 2016, and what that executive order does is it redesignates certain officials in the department, importantly hearing officers and other adjudicators, so that they are no longer employees of the department that they potentially have to decide against. So essentially we're talking about the same issue here, the structural bias issue. So this is an issue that you should take into consideration when you're interpreting the language of the statute. And our view is that, look, under the plain language of that statute, dismissal is the appropriate remedy, and also when you look at the rules of statutory interpretation, it makes sense and it's not unjust. So that's that. So that's the remedy part of it. So let me move to due process. Separate and apart from violating its own rules, the department violated due process by not disclosing Dr. Zachariah's letter. So it's black letter law, as I'm sure the court is aware of that. Due process arguments are a question of the law, which are reviewed under a de novo review standard. In cases involving professional licenses, like this one, Illinois courts hold that due process requires an agency to provide the licensee any information which will help the licensee in preparation of his or her defense. And in other words, they have to provide anything that might be helpful to the accused. Now, this rule applies regardless of what you find with regards to the department's rules. And I don't need to belabor this point. It's clear from what I already said that Dr. Zachariah's letter and his testimony might be helpful to Dr. Legro. And regarding the prejudice issue, because for due process we do have to show prejudice, this letter would have provided meaningful information about the type of discipline that the department imposes in circumstances where a licensee has only been accused of an administrative violation, such as Dr. Legro. And as the court can see in plenty of the cases that we cite in our brief, and I'll point out Gruel and Lamb, that reviewing courts often consider discipline imposed in similar cases to decide whether the discipline imposed in the case before them was unreasonable. Let me ask you a question. The information that you have at your disposal is the Tribune article? Yes. Did any of those cases, if you know, if it was explained in the article, involve the sister state business? It was not explained in the article. My question is, how does the disparity in punishment matter when this case is not unique, but it's of a specific kind? That is, the department's apparent policy, whether written or not, well, we mirror what they do in other states. Why does it matter? Why does it matter in that if that is the policy, whether it's a good or bad policy, how other people who had privileges revoked or restricted, how the department treats them, what does that have to do with this case? Well, you actually bring up an important point, because that should not be a policy. But if that is the policy, and I believe that's the policy that they follow, one of the main issues is that when you have that policy in place, you as a licensee, you might as well not even show up to the hearing, because your discipline is predetermined. But I'll tell you how I suppose it works. If you look at the cases, like I'll point out Gruwell and Lamb and Catlin and other cases, which we cite in our brief, when courts are looking at whether the department has abused their discretion in imposing discipline, you'll notice that they always look at cases in similar circumstances. And so the problem when you're talking about... This isn't a similar circumstance. Well, exactly. But the problem is that what we have here is when you have a situation, which if you believe Dr. Zachariah's letter, generally the department doesn't impose discipline when you have an administrative violation or something very minor. The only way for us to get that information is talking to him, because that information is not public. And so by not allowing us to speak to him and not giving us his letter when we had a chance to actually call him up and talk to him, they prevented us from getting the information that we need in order to fully question whether the appropriate discipline was imposed here. Counsel, I take it that the crux of your argument as to that issue is that when we look at exculpatory evidence, we're not talking about the normal legal definition of exculpatory evidence. You're talking about exculpatory evidence as it's defined in the Illinois Administrative Code. Exactly, and that's what you have to look at here. Because you would agree that under a legal definition of exculpatory evidence, that wasn't exculpatory. Well, in legal you mean like a criminal definition. I don't know if I want to concede that, because I don't have the case law which defines it before me here. But I'm really only concentrating on the language of their rules, which defines it as any evidence which tends to support the licensee's position or call into question the credibility of the department witness. But I understand what you mean. So moving on, let's talk a little bit about the abuse of discretion here. So the director's disciplinary decision, as the court saw it, is not untouchable. This court should reverse the director's disciplinary decision if it finds that decision is either overly harsh in view of mitigating circumstances or unrelated to the purpose of the act. And so this is a special abuse of discretion standard that applies here. And a general abuse of discretion standard is really irrelevant here. Turning to the first point, effectively doubling Dr. Lebrow's discipline makes no sense here when you look at the mitigating factors. And not to get too much into facts, but I think the facts here are important. Dr. Lebrow and his team at American Specialty Health actually acted responsibly here. They considered Kentucky law before ever peer reviewing a file in Kentucky. They went through the law. They thought that, hey, we only need to get licenses in order to do these peer reviews, and that's what they did. He went out. He got a license. He got a license for his peer reviewers. But what they didn't realize was there was this very obscure rule in Kentucky which requires that in addition to having a license to do a peer review, you also have to be separately registered with the state to do it. And this is the only state where Dr. Lebrow is licensed in six states. And this is the only state that requires that, and Illinois doesn't require it. But once Dr. Lebrow and his team learned of the violation here, once they learned of this Kentucky law, they immediately stopped doing peer reviews. They stopped doing them. And they went and they registered with Kentucky, and they did everything they were supposed to do. And Dr. Lebrow, for his part, he agreed to settle the matter with Kentucky, and took the blame, even though he never actually performed a peer review. And not only that, he came to the department right away, and he said, this is what happened in Kentucky Department. So here he's acting completely responsibly. And on this record, it's simply unreasonable to impose additional discipline against Dr. Lebrow's Illinois license. And in fact, if you look at the ALJ's basis for mirroring the discipline against Dr. Lebrow's license, it really makes no sense. So you've seen the Department of Professional Regulation Law. There are nine aggravating factors. The ALJ could only come up with one factor. She said Dr. Lebrow did lack contrition, which, based on the record that I just laid out to you, just really doesn't make any sense. She also stretched to come up with two of what she called secondary factors. Essentially, that Dr. Lebrow violated the law, what he's already been punished for, and that his discipline was recent. And as we explained in our briefs, neither of these is a valid aggravating factor. And plus, the ALJ also disregarded pre-mitigating factors that under Department of Professional Regulation Law mandates that the hearing officer consider when recommending discipline. So not only was this discipline unreasonable in view of the mitigating circumstances, but the discipline is also unrelated to protecting the public health and welfare of Illinois citizens. And that is the purpose of the Act. But let me say that again, just to make that clear. Courts have said repeatedly that the purpose of the Act is to protect the health and welfare of Illinois citizens. Now, we pointed out in our briefs many reasons why the discipline here is unrelated to protecting Illinois citizens. And I'll just give you a couple for instance. Illinois doesn't have a law similar to the Kentucky law like we already talked about. So additional discipline here won't serve to deter any physicians. Also, Illinois already requires that the department report Dr. Lebrow's out-of-state discipline for 10 years. So Illinois citizens already have notice of his reprimand in Kentucky. And the department hasn't offered any reason why this discipline is related to protecting the health and welfare of Illinois citizens. Now I'll move on finally to the due process argument. It's an elementary requirement in due process that an agency's decisions must be solely based on the evidence seduced at the hearing. And Illinois has codified this requirement in the Department of Regulation Law. So the department has made, which we've already talked about, it's made no secret that it has an unwritten policy in sister state actions under the Medical Practice Act of doing what it calls mirroring discipline already imposed in the originating state. The director and the medical disciplinary board have said unequivocally that this is the department's policy in judicially noticeable orders. And I'll just read you, I'll just read from one of those orders, the language of the director. And this is a quote. As a matter of course, the department's sanctions for violation of section 22A12 of the act is proportionate to the underlying discipline imposed by the sister state. So it's unequivocal that this is the department's policy. This is the top official of the director saying this in a judicially noticeable order. Even if the court chooses to ignore this policy, as the department has asked you to do, it's clear from the department's disciplinary decision here that it was motivated by the desire to mirror the discipline that was imposed against Dr. Well, so I already discussed why predetermining discipline is a problem. It's a meaningless, it makes the hearing a meaningless ritual and robs the licensee of his or her opportunity to be heard. It also encourages the decision maker, whether intentionally or unintentionally, to weigh factors in a way that supports the predetermined discipline. And I'll put to you that that's what we see here. Okay. Thank you. You will have rebuttal. Good afternoon, your honors. May it please the court. Bridget DiBattista on behalf of defendants at police. Your honors, we ask that the court find that the director did not abuse his discretion in reprimanding and imposing a $1,000 civil fine on the chiropractic license of Dr. Lebrow. As this court held in Mond versus Department of Professional Regulation, the practice of medicine, in addition to skill and knowledge, requires honesty and integrity to the highest degree. To ensure that medical professionals licensed in this state are continually meeting this standard, the Medical Practice Act authorizes the department to discipline and impose fines upon several enumerated grounds. One of these grounds includes for adverse action taken by another state against chiropractic licenses. Discipline by the department, like the discipline here, is entitled to a high level of deference and should only be overturned when the decision is an abuse of discretion. In other words, only when no reasonable person could agree with it or when it is arbitrary, capricious, and unrelated to the purposes of the act. Unable to make this showing here, Dr. Lebrow instead dedicates the bulk of his arguments to purported procedural and due process violations. With respect to the first of these arguments, the director did not abuse his discretion in denying the motion to dismiss over the purported non-production of the Dr. Zachariah letter. It also was not a violation of Dr. Lebrow's due process rights for the director not to grant the motion to dismiss or reopen the hearing. Now, Dr. Lebrow focuses on the meaning of the term exculpatory in the regulation and posits that that presents a question of law that is reviewed de novo. And while that is an issue before this court, what is meant by exculpatory in the regulation, the ultimate question is, even if Dr. Zachariah's letter is found to be exculpatory, which we do not concede that it is, but even if it were, was it an abuse of discretion for the director to refuse to dismiss the case in its entirety over the non-production of the letter? We submit that this severe sanction, and again, when we look to this court's case in In Re Marriage of Bradley, dismissing a case over a discovery violation is found in that case to be, quote, a severe sanction. And we know it's a discretionary decision because when we look to the regulations, we see that discovery motions are limited to those seeking sanctions. And also, discovery motions are not allowed before the ALJ unless they are in the form of a motion to dismiss. So a motion to dismiss over a discovery violation is, in essence, a motion for sanctions. So the ALJ, the director, is vested with discretion over whether to dismiss the case over that. We argue that this severe sanction of dismissal is not appropriate here when we consider the very tenuous connection that the letter bears to this case. Now, in the letter, I believe it was stated that Dr. Zachariah stated that, generally, the department does not prosecute cases involving administrative errors. That is not a quote from the letter. Rather, Dr. Zachariah merely posits why certain clinical privilege revocations did not result in discipline. And he hypothesizes that, potentially, they may have resulted from administrative violations. He does not make a blanket statement that the department does not punish or penalize administrative errors. Indeed, when we look to the Medical Practices Act, we see that administrative errors can and do result in violations. But even more importantly, the relevance of this letter hinges on whether the treatment of a mere administrative violation. But as the director found here, this was not a mere administrative violation. These protocols in Kentucky were set up so that individuals, doctors, peer reviewing whether or not an individual received treatment were adhering to certain standards, certain reporting requirements, certain ethical conduct requirements. So this was not a mere registration. It was making sure that these doctors who had clients that were the insurance companies, when they were denying coverage, had the proper credentials. And as the director found, the work that Ash was doing had the power to deny services, partially deny services, or approve services for patients. The claims that were reviewed went to determining the appropriate care for a particular patient. Illinois has no such requirement. Illinois does not have any such requirement. We don't really care whether these people are certified, qualified, or not. We let them make the decisions without such certification, right? Well, what we care about, and what is at issue here, is that we care that our doctors that are licensed in this state are adhering not only to the laws of Illinois, but that we expect, again, the highest standards of integrity and honesty of our doctors, of our professionals here. Why was he dishonest about what Dr. Lebrow did? Well, with respect to, that goes to kind of the lack of contrition argument, which was that Dr. Lebrow was in an oversight capacity. He oversaw his team of doctors. So although he says, you know, I did not particularly review the forms, so I did not actually perform a peer review. The director did not accept that characterization. And again, you know, we can think of an analogous situation in the legal context where an associate might draft a document, and the partner would not be able to say, well, yes, I signed the document, but I didn't actually review the record. So similarly here, I think the director was troubled by, during the hearing, the lack of contrition by saying, you know, I did not personally conduct the peer review and not acknowledging the oversight role that the doctor had here. But just getting back to the tenuous relationship that this letter has, again. I thought he got hung up on the paragraph in the agreed order that says that he reviews patient so-and-so's records. So, Your Honor, the lack of contrition was a twofold. It was that, the denial of the wrongdoing, which was agreed to in the Kentucky order, but it was also the consistent attempt to, and this is a quote from the director's order, consistently attempted to minimize the violation. If he entered into an agreed order, which punished him, and which would be on his record in Kentucky and in Illinois, doesn't that totally undercut one part of the two-point contrition argument that you're making? It shows contrition that he admitted that he violated Kentucky rules, and he said that he did, in one fashion or another, and accepted that punishment. So that has to wipe out the idea that somehow he's not contrite, or it erases an awful lot of law that says, you know, you plead guilty. Now, I understand about the second part that he was trying to explain, and that explanation was not accepted by the director. Your Honor, it does not wipe out. What was said with respect to the Kentucky action was with respect to the Kentucky action. He agreed in the Kentucky action, yes, I did violate it. Here, we have an independent violation. It's an independent violation under Illinois law to violate a sister state's law. So here, in this action, he did not, unlike in Kentucky, he did not say that he violated. He, in fact, said the exact opposite. He said, I did not violate the Kentucky laws. So that here was the, it's diametrically opposed to what he said in Kentucky. How do you acknowledge not recognizing that there was the requirement for the additional certification? He acknowledges that the legal team missed that requirement. There's no way that he could not have agreed that there was obviously an oversight. However, he refused to acknowledge his responsibility in being in an oversight capacity. Well, for instance, it's an excellent question. In his letter to the department, he initially reported his violation. He said, the reason I entered into it is because I recognize my responsibilities. At the hearing, however, he made no such recognition. He simply said, I don't actually review the peer reviews, so I did not actually violate the law. He said it once, and now you've brought him up on charges, so you're expecting him to now say it a second time. We would expect him to, at the hearing, to, as he did in Kentucky, to also admit that he was in this oversight capacity. Yes, in addition to that. But it's already been adjudicated that he's in that oversight capacity. That's precisely the issue, however, is that it's been adjudicated, but yet in our action, he backtracks and says, well, okay, yes, I agreed to that for an expedited, to expedite the process, but here, in Illinois, I'm going to say I did not actually do it. And that was troubling to the director and demonstrated a lack of contrition for the violation. And just to backtrack to the due process argument with respect to Dr. Zachariah's letter, this was not a due process violation. We see that pre-hearing discovery is not constitutionally required in an administrative hearing. What is required is that the agency act reasonably, that there is an opportunity to be heard, to cross-examine adverse witnesses, and to have an impartial decision maker. Dr. Lebrow has failed to show that any of these items were not met here, particularly with respect to prejudice. Dr. Lebrow argues that there was not an opportunity to question Dr. Zachariah. That is absolutely not correct. He could have been called, but he was not called as a witness by Dr. Lebrow. In addition, Dr. Zachariah was not called as a witness, so although he was listed on the department list of witnesses, he was ultimately not called at the hearing. He did not testify at the hearing. So there is no prejudice of inability to cross-examine a witness. In addition to that, at the time of the hearing, Dr. Lebrow had a copy of the Chicago Tribune article, and in our brief we explain how this could have been used as secondary evidence to lay a foundation for the letter. So he could have called Dr. Zachariah and questioned Dr. Zachariah with respect to the Tribune article. Further, Dr. Lebrow is currently, and was at the time of the motion for rehearing, in possession of the very letter that he sought. So any arguments that he did make, arguments with respect to the letter, were made to the director. So he simply has been unable to show prejudice, and for that reason there should not be a due process. Let me ask another question. You're talking about the discretion standard. What discretion did the ALJ use? What discretion did the director use in saying, well, basically this is what we do. We mirror. That seems to me to be a total lack, or a failure to exercise discretion. You have an unofficial policy that could be established by rule or statute. And instead it's an unwritten policy that says, even though our state doesn't have this requirement, and even though you've already admitted to this, side note, you've irritated us by not being more contrite at the hearing. Even though you've already admitted to this, it's going to be of notice to consumers in Illinois, to potential patients in Illinois for a decade, which will probably exceed his continued active practice, and a monetary fine. We should just mirror that, even though our own state doesn't think it's important to have this regulation. I don't understand how anybody used their discretion, other than to say, we're going to do what Kentucky did. It reminds me of the trial judges who said, I don't give probation for drug cases. And they got reversed, because probation was available. Instead of exercising the discretion they're given, they don't use it. Well, respectfully, Your Honor, your question presumes that there is a policy of predisposed consideration, that regardless of what occurs at the hearing, regardless of what I've said up to the point of my conclusions of law, we're going to mirror the discipline. There has been no opportunity for the Department to counter this, what is a factual contention. It is a factual contention on the part of Dr. Lebrow that the Department has this purported policy of being prejudiced. There's nothing in the record that suggests that the State or the Department acknowledges that this is a process or a policy or a means of sometimes disposing of cases. The only evidence is the use of the word mirror at the end of our decision, of the Department's decision, which comes after a full hearing. Is that the ALJ's language? That's the ALJ's language that the Directorate adopts. But that presumes that that word means that the ALJ was predisposed to rubber stamping. What else does it mean? Well, it means that after we have gone through the process of listening to Dr. Lebrow and determining, weighing the mitigating and aggravating factors, that ultimately it turns out that yes, this is going to be symmetrical. Is it an aggravating factor that this was recent? I totally, I can't even grasp that. I don't know what that means in this context. One of the reasons it's recent is because he found out about it and he did something about it in Kentucky. I assume, well I shouldn't assume that, it's not in the right. I assume he's okay with Kentucky now. That's an assumption I shouldn't make because that's not in the record. But apparently he did whatever he was required to do in Kentucky. But we cite cases with respect to lawyer discipline where the recency has been considered a factor. Your Honor, while you might disagree with it, the question ultimately is, was it an abuse of discretion? Could no reasonable person agree with that? What does recent mean in this context? With respect to the discretion of the director, they found that within two years that that qualified as recent. Isn't it better to address something like this recently rather than five years later? Your Honor, an independent requirement is that an individual who has been disciplined notifies the department. So that's an independent requirement. There's no good behavior or this is encouraging this type of behavior to report. That is already required of a registrant, that they are required to do so. So by hanging back and refusing to disclose that this occurred, that is actually an independent violation. But that's not present here. Because there isn't any hanging back. Right, there isn't. But an argument raised by Dr. Lebrow is, well, if you're going to look to recency, that's going to hinder people from reporting. And that's not the case because the law is that they're required to report. So there's no ill effects of public policy that are going to result. So as soon as somebody reports themselves within the two-year period, the department is always going to find that recency is an additional aggravating factor. I think that with respect to this particular case, we have to look at the fact that although Dr. Lebrow has practiced for many years, that the fact that this occurred recently in his career was a factor that militated in favor of discipline. And the question is, is that something that no reasonable person could agree with? And again, we have to remember that that was only one of the factors that the director relied on. But the key factor here, again, was the lack of contrition. Downplaying what was at stake here was not merely a registration. It was affecting Medicaid recipients' coverage, the decisions that were being made by Dr. Lebrow and Ash. Illinois doesn't even require it. Well, under our law, however, we require that doctors, if that argument were to have, you know, think about it. It would completely eviscerate the sister state discipline section, right? If it has to independently be a violation of Illinois law, there would be no need to have a sister state discipline provision, right? Because it would be an independent violation of Illinois law. So we have to look to the fact that not only do we expect doctors in this state to be adhering to our laws, we expect... You just said it was an independent violation. I'm sorry? You just said a few minutes ago that this is an independent violation in itself because he got disciplined in another state. Well, when I say that, I say we have an independent hearing. Again, as we did here, we had an independent hearing to determine discipline. And that's why, to your question with respect to notice, it's not merely notice of the Kentucky discipline. It is to make sure that individuals licensed in our state are not only adhering to laws of another state. And think about it from an Illinois patient consumer perspective. They would expect that a doctor that they go to see or that they have services rendered, that not only are they adhering to our laws, they would expect them to be adhering to the protocols in place in other states. And that is the whole spirit behind this law. Why would I as a patient care whether he's doing something in violation or in compliance with Florida? Because under the law, Your Honor, we expect doctors to be held to the highest standards of integrity. And it's not simply adhering to the laws here. And the sister state violation law recognizes that we expect doctors to be adhering to other states' laws as well. And again, I just want to highlight this purported policy. This is a factual argument that we never, with respect to mirroring sister state discipline, that there's some sort of prejudicial going into the hearing and rubber stamping this. This is a factual argument that the department never had an opportunity to refute. The orders that Dr. Lebrow has read to you were brought in at the circuit court level. They are not properly part of the administrative record. The only way for the department to have refuted and to say that's incorrect, we do not have a policy, would be to have similarly violated the administrative review law and at the circuit court level attempted to bring in extraneous evidence. We did not do that. Instead, we properly asserted that this argument has been forfeited. For example, we had no opportunity to bring an order where a sister state discipline, where the sister state had imposed discipline of X, and the state went to discipline Y. We had no opportunity to show that that occurs, that there was not a rubber stamping or purported policy of predetermining these issues. For that reason, we would ask that this court not consider the issue. Again, we understand that forfeiture, the language is that it is an admonishment on the parties. It is not a limitation on this court's jurisdiction. We understand that at times the court will proceed to consider an argument that has been forfeited, but we would ask that the court recognize that that is done typically in a legal, when it's purely legal, when there's not fact issues where a department had not had an opportunity to make its own case. And we cite Gruelle and the Jones case, both recent cases where this court refused to go beyond forfeiture and consider an argument where there was fact questions at issue. And unless the court has any further questions, we ask that the court affirm the director's decision. Okay, thank you. Any rebuttal? Yes. As far as contrition, Dr. Lebrow did not downplay his violation in Kentucky. What he did is he raised a mitigating factor. And that mitigating factor was that, hey, look, I admitted to this violation in Kentucky, but really, I really don't feel like I violated law, even though I took the blame for it. And so that's what he was doing. He was talking about mitigation when he said, look, I didn't actually peer review a file. He wasn't downplaying anything. As the court's already noted, he already said in a letter to the department, look, I take blame for this. We made a mistake. So that's contrition. Secondly, I think the department misstates what happened with regards to Dr. Zachariah's letter. We learned, and I just want to make that clear, because it's important. We learned about the letter four days before the hearing from this article. We had no idea what was in the substance of that letter. We filed a motion to dismiss before the hearing. We asked the hearing officer to have them produce the letter or dismiss this action. She refused to have them produce the letter. We never saw that letter at the hearing. But what's important is the substance of her decision. Essentially she was saying this letter makes no difference to this particular case. She's already said that this isn't relevant here. So there would be no reason for us to call Dr. Zachariah as a witness and talk to him about something and ask him questions about something that the ALJ, the hearing officer, already told us wasn't relevant. You probably would understand what would have happened in that circumstance. We got the letter after the hearing. We raised the issue to the director about, look, we want to question Dr. Zachariah now that we have this letter. He refused to allow us to question Dr. Zachariah and did not give any reasons for doing so. Now as far as... Who had listed Dr. Zachariah as a possible witness? Yes, the department had listed him. So as far as the recency, the argument that we were making is, look, if you accept that this was recent, as the court's already pointed out, then it's a disincentive for the licensee to report. And you don't report every year. You only report every three years because you only have to register to get your new license every three years. It's not every year. So Dr. Lebrow, if he would have known, hey, these guys are going to deem me for being recent, he could have waited until it was time for him to register, which would have been probably, I think, another two years. So it's not like you have to register every year. So the recency just, I think, as the court understands, just doesn't make any sense. And I assume they would have alleged that he failed to report at the time. Right, exactly. Now the mirroring, you don't even have to look at the judicially noticeable orders here. You only need to look at the ALJ's decision here. And mirroring means exactly what the director, what the board has said that it means in the past. And I'll stop there. Counsel, I have a question, and it's sincere. And I think you can tell by our questioning that we're interested in the case and the issues that arise. But just out of curiosity, a senior practitioner who one would think is successful based upon his involvement in these peer review activities in other states, what is the motivation for the appeal? So this is his motivation. I understand that's completely outside the record. It's not going to affect how we resolve the case. It is simply maybe curiosity. If you look at the record, you'll see that he was schooled in Illinois. He's from Illinois. And so Illinois was his first license. So his Illinois license is like kind of his baby. And he doesn't like having this scarlet letter on his license. But the scarlet letter's already on his license with the notification you indicated would be on his record for a decade that he'd been sanctioned. Right, for a decade. But with this, it's on forever. You know, there's no, so for the rest of his life, and actually probably after he dies, that's going to be on his record. So that's one motivation. Also, he just didn't like the fairness of the process in the department. He felt like it was unfair. He felt like throughout the process, he wasn't treated fairly. And the problem, one of the reasons why a lot of these issues that we raise here don't come up is because the licensees don't have the resources to challenge, for instance, this policy, which the department is asking to ignore, but it's obvious that they follow. They don't have the resources to challenge it. So because he has the resources to come and say, this is not right, this is unfair, he really feels strongly about taking that opportunity. Thanks to both of you. The case is submitted. The court stands in recess until further call.